[Civ. No. 9084. Fourth Dist., Div. Two. Sept. 30, 1968.]

JOAN ADELE RYNSBURGER et al., Plaintiffs and Appellants, v. DAIRYMEN'S FERTILIZER COOPERATIVE, INC., Defendant and Respondent.

Dannemeyer & Tuohey, Conrad G. Tuohey and William E. Dannemeyer for Plaintiffs and Appellants.

Richards, Watson & Hemmerling and Glenn R. Watson for Defendant and Respondent.

KERRIGAN, J.—In July 1965 appellants filed suit in the Orange County Superior Court for the purpose of obtaining

an injunction to abate a nuisance against the Dairymen's Fertilizer Cooperative, Inc., and three officials thereof. Inasmuch as the officers and directors are only nominal parties, the corporate entity will be regarded herein as the sole adverse party and will be referred to as "Dairymen's" or "Respondent."

Respondent is a nonprofit cooperative corporation formed by a combination of dairymen for the purpose of removing manure from the numerous dairies in the area in and around the City of Dairy Valley[1] to the respondent's plant where it is stockpiled, composted, packaged and sold as commercial fertilizer. Appellants are 11 homeowners who reside in close proximity to the fertilizer plant. Their residences are situated in different geographical areas: three live in the City of La Palma, in the County of Orange; two in the City of Lakewood, Los Angeles County; two in the City of Dairy Valley (Cerritos), in Los Angeles County; two in the City of Cypress in Orange County; and finally, two reside in an unincorporated area of Orange County.

Dairymen's had maintained a manure stockpile and fertilizer facility at 13155 183d Street in the City of Dairy Valley for approximately eight years. In 1964 the State Division of Highways acquired the site for the development of the Artesia Freeway. It therefore became necessary for the respondent to acquire another location for the conduct of its business. Consequently, it purchased a 12-acre parcel of property located at 12801 Del Amo Boulevard in Dairy Valley for $360,000. Respondent was granted a "zone special use permit" in May 1965 for the construction of a fertilizer plant, subject to compliance with certain operating conditions imposed by the Dairy Valley City Council.

Dairymen's parcel is situated approximately 600 feet from the nearest residential property in La Palma, 500 feet from the nearest residential property in Cypress, and approximately 200 feet from the nearest residential property in Lakewood.

In July 1965 appellants filed the Orange County Superior Court action for an injunction to abate a nuisance, and secured an ex parte temporary restraining order prohibiting respondent from conducting fertilizer operations on the new site. However, the temporary restraining order was dissolved

---

[1]The name of the City of Dairy Valley has been changed since the inception of this litigation and is now known as the City of Cerritos.

in October 1965, and Dairymen's was permitted to undertake operations on the subject property. In dissolving the temporary restraining order and denying a preliminary injunction, the court found that Dairymen's operations were necessary for health purposes, and that any harm to appellants was outweighed by the sanitary utility of Dairymen's function in removing the daily manure deposits of the thousands of cows maintained in the numerous dairies located in the City of Dairy Valley and the surrounding communities.

In February 1966 appellants' counsel appeared before the city councils of La Palma, Cypress and Lakewood and requested that an action be initiated by the municipalities to abate respondent's operations. In March 1966 the Cities of La Palma and Cypress jointly filed a nuisance action in the Orange County Superior Court. The City of Lakewood filed a similar suit the following month in the Los Angeles Superior Court. After the issues were joined, it was stipulated that the municipalities' actions against Dairymen's be consolidated and that the venue be changed to the San Bernardino County Superior Court.

Trial of the consolidated suits commenced in the San Bernardino forum in May 1966 and ended a month later. Over 60 witnesses were called. Several of the appellants from the Cities of La Palma, Cypress and Lakewood testified, but the court refused testimony of those appellants residing in Dairy Valley and those living in the unincorporated area of Orange County.

The San Bernardino County trial court found, inter alia, that: the respondent's operations had *not* created and did *not* constitute a public nuisance; a stockpiling and fertilizing operation on the Del Amo property would not create or constitute a public nuisance if the operations were conducted in conformity with the requirements imposed by the Dairy Valley City Council and the restrictions imposed by the court.

In granting the special use permit, the city had ordered Dairymen's: to develop the property in accordance with the plot plan approved by the council; to provide off-street parking for motor vehicles; to pave all parking areas; to construct roadway access to Del Amo Boulevard; to pave all driveways; to provide landscaping, including quick-growing trees placed closely together to form a fixed and visible buffer around the perimeter of the property; to fence the entire property; to develop adequate water service for immediate use; to close

down loading and unloading operations during periods of excessive wind; to restrict its operations to daylight hours; to limit the maximum height of the stockpile to 25 feet; and to furnish a bond to the city guaranteeing compliance with the conditions of the special use permit.

The court decreed that Dairymen's comply with the aforesaid conditions imposed by the Dairy Valley City Council, except that the maximum height of the stockpile was ordered not to exceed 20 feet. The court further ordered Dairymen's to comply with the following supplemental conditions: (1) Truck loading and packaging operations be conducted in a newly-constructed building equipped with dust control equipment sufficient to meet Air Pollution Control District standards; (2) the paved roads, pavement and parking areas on the property be kept free of dust-producing material, and any unpaved haul roads be treated with oil; (3) machinery utilized in loading and packing fertilizer be electrically driven; (4) tractors used in stockpiling of fertilizer be equipped with deflectors; (5) fertilizer hauled in and out of the plant be fully covered with a tarpaulin or canvas; and (6) obtain Air Pollution Control District permits and clearances.

The judgment establishing the foregoing conditions governing Dairymen's operation became final in November 1966, and in the judgment, the court reserved continuing jurisdiction over Dairymen's future operations.

Thereafter, in January 1967, appellants took steps in the Orange County Superior Court to reactivate their original suit. Manifestly, appellants were disappointed with the result of the cities' actions against Dairymen's. When the Orange County Superior Court set the matter for trial for September 5, 1967, Dairymen's counsel countered by filing an order to show cause proceeding in the San Bernardino Superior Court to restrain appellants from taking any further proceedings in the Orange County Superior Court action. Initially, only 9 of the 11 appellants were served with the order, which explains why two post-judgment injunctions are involved in this appeal. The San Bernardino Superior Court restrained the nine appellants from taking any further steps or proceedings in their Orange County action in September 1967. The following month, after service was effected on the two remaining appellants, an identical injunction was issued.

Appellants then sought a writ of mandate or prohibition in this tribunal to annul the injunction proceedings. Their petition was denied in November 1967.

This appeal is taken from the two injunctions restraining the appellants from proceeding with the prosecution of the Orange County Superior Court nuisance action.

Appellants' attack on the injunctions is based on the premise that the judgment of the San Bernardino Superior Court determining that the respondent's operations did not constitute a *public nuisance* is not res judicata in a suit by private property owners for abatement of a *private nuisance*. In urging that the San Bernardino judgment is not a bar to the trial of the Orange County action, appellants present the following arguments: (1) The suits of the three municipalities initiated in the name of the People of the State of California were filed on the theory that Dairymen's maintenance and operation of a fertilizer plant constituted a *public nuisance*, whereas the existing Orange County suit filed by appellants was predicated on the concept that the defendant's activities constituted a *private nuisance*; (2) the San Bernardino Superior Court refused to permit certain appellants, who were not residents of the three cities, to testify at the trial and, therefore, the San Bernardino judgment may not be raised as a bar to the Orange County action charging a private nuisance. Miscellaneous issues are also raised relating to the affirmative defense of laches, and appellants' obligations under the surety bond which they posted when the Orange County Superior Court issued the temporary restraining order against Dairymen's operations.

While statutory and case authority exist reflecting that there is a clear distinction between private nuisances on the one hand and public nuisances on the other (Civ. Code, §§ 3479, 3480, 3481; *Johnson* v. *V. D. Reduction Co.*, 175 Cal. 63, 65-67 [164 P. 1119, L.R.A. 1917E 10071] ; *County of Yuba* v. *Kate Haynes Min. Co.*, 141 Cal. 360 [74 P. 1049] ; *Fisher* v. *Zumwalt,* 128 Cal. 493, 494-497 [61 P. 82] ; *Meek* v. *DeLatour,* 2 Cal.App. 261 [83 P. 300]), the critical issue is whether the San Bernardino Superior Court judgment determining that Dairymen's stockpile plant did not constitute a public nuisance bars appellants' suit for a private nuisance.

Under the doctrine of res judicata, an existing final judgment on the merits of a cause rendered by a court of competent jurisdiction is, in all subsequent actions, conclusive of the rights of the parties, and their privies, on all material issues that were or might have been determined. (*French* v.

*Rishell,* 40 Cal.2d 477, 479 [254 P.2d 26]; *Dillard* v. *Mc-Knight,* 34 Cal.2d 209, 213 [209 P.2d 387, 11 A.L.R.2d 835]; *Wynn* v. *Treasure Co.,* 146 Cal.App.2d 69, 78 [303 P.2d 1067].) ■ The doctrine rests upon the sound public policy that there must be an end of litigation and, accordingly, persons who have had one fair trial on the issue may not again have it adjudicated. (*Dillard* v. *McKnight, supra,* p. 214.) ■ The application of the doctrine in a given case depends on affirmative answers to these questions: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea [of res judicata] is asserted a party or in privity with a party to the prior adjudication?" (*Berhnard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892].)

■ With respect to the first question, appellants contend that they, as private individuals, have a separate and mutually exclusive cause of action for abatement of a private nuisance which is totally distinguishable, separate and independent of the municipalities' action for public nuisance. The record discloses, however, that the governing bodies of the three cities involved in the San Bernardino court trial were requested to take action by the attorneys who represent the appellants herein. The minutes of the city council meetings reflect that appellants' counsel advised the city officials that they represented the appellants in the Orange County action then pending, and that "90% of the work had been done and would be made available to the City Attorney." Many of the appellants testified in the San Bernardino trial. The cities' action was filed for the purpose of benefiting all property owners located in proximity to the defendant's plant. The allegations contained in appellants' second amended complaint in the Orange County suit are substantially the same contentions set forth in the People's actions. There is a strong identity between the exhibits attached to the complaint in the appellants' Orange County action and those affixed to the cities' action. While appellants now assert that their Orange County action was instituted to enjoin a *private nuisance,* their second amended complaint alleges that the respondent's intended activity "resulted in a *public nuisance* to plaintiffs and others as defined by section 3479 of the Civil Code"; that said public nuisance would be abated by ". . . the complete enclosure by a dome superstructure of the entire operations. . . ." This allegation to the effect that Dairy-

men's operations constituted a public nuisance was repeated by reference in each of the six causes of action set forth in appellants' complaint. In the prayer, appellants also pray for "an injunction regulating defendants in a manner deemed appropriate by the court . . . so that the operation . . . will no longer constitute a public nuisance to plaintiffs and others residing in the vicinity . . . such as by requiring said defendant . . . to completely enclose by a building . . . its entire operation. . . ." It thus appears that appellants charge defendants in their Orange County action with the creation, operation and maintenance of the identical nuisance pleaded and tried in the San Bernardino action.

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. (Civ. Code, § 3480.) Clearly, the conditions complained of in both the San Bernardino and Orange County suits affect the entire neighborhood and amount to allegations of a public nuisance. (See *Eaton* v. *Klimm,* 217 Cal. 362, 368 [18 P.2d 678]; *Wade* v. *Campbell,* 200 Cal.App.2d 54, 59 [19 Cal.Rptr. 173, 92 A.L.R. 2d 966].) Consequently, appellants are precluded from converting what they formerly alleged to be a public nuisance into a series of private nuisances. (See *Eaton* v. *Klimm, supra.*)

Appellants next assert that the San Bernardino action is not res judicata inasmuch as appellants were not parties in the city suits, and for the further reason that the San Bernardino court excluded proffered testimony of certain of the appellants, thereby denying them their day in court. ■ By the usual formulation of the rule, however, the effects of res judicata may also be applied to those in privity with parties to an action. (65 Harv.L.Rev. 885; 3 Witkin, Cal. Procedure (1954) p. 1956.) Privity involves a person so identified in interest with another that he represents the same legal right. (*Zaragosa* v. *Craven,* 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R. 2d 461], quoting 30 Am.Jur., § 225, p. 957].) ■ Where statutory authority to sue has been given specifically to a public entity by statute, a judgment rendered therein is res judicata as to *all* members of the class represented. (*City of Chino* v. *Superior Court of Orange County,* 255 Cal.App.2d 747, 755 [63 Cal.Rptr. 532].) Therefore, citizens and residents, to the extent they are in privity with or represented by the city or

state, are bound by judgments against the governmental body. (*Price* v. *Sixth Dist. Agricultural Assn.*, 201 Cal 502, 513 [258 P. 387].) ██ If it appears that a particular party, although not before the court in person, is so far represented by others that his interest received actual and efficient protection, the decree will be held to be binding upon him. (*Graham* v. *Board of Supervisors*, 25 App.Div.2d 250 [269 N.Y.S.2d 477, 480]; see *King* v. *International Union etc. Engineers*, 114 Cal.App.2d 159, 164 [250 P.2d 11]; *Smith* v. *City of Los Angeles*, 190 Cal.App.2d 112, 128 [11 Cal.Rptr. 898].) Since property owners similarly injured by a nuisance constitute a class (*Rodman* v. *Rogers* (6th Cir. 1940) 109 F.2d 520, 521), and since that class was well represented in the San Bernardino action, the principle of res judicata applies. ██ "The rule should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties. . . ." (*Hochman* v. *Mortgage Finance Corp.*, 289 Pa. 260 [137 A. 252, 253]; see also *Stearns* v. *Los Angeles City School Dist.*, 244 Cal.App.2d 696, 714-715 [53 Cal.Rptr. 482]; *Cade* v. *Superior Court*, 191 Cal.App.2d 554, 558-559 [12 Cal.Rptr. 847]; *Myers* v. *Superior Court*, 75 Cal.App.2d 925, 931 [172 P.2d 84].)

██ The San Bernardino judgment imposed numerous and complex regulations upon respondent respecting the operation of its fertilizer plant. The plant building was constructed and equipment installed in compliance with the conditions established by the San Bernardino tribunal. The record reflects that those improvements installed in compliance with the city of Dairy Valley restrictions alone amounted to some $19,000. In view of the fact that the San Bernardino court retained jurisdiction over Dairymen's operations, it obviously intended to enforce the conditions it imposed. Consequently, it would be intolerable for two or more courts to undertake the operations of the plant, for it is fairly deducible that two courts might impose different or conflicting regulations upon respondent's operations. The San Bernardino court's retention of jurisdiction is in accordance with the rule that a court of equity may retain continuing jurisdiction to meet future problems and changing conditions. (*Ecker Bros.* v. *Jones*, 186 Cal.App.2d 775, 786 [9 Cal.Rptr. 335]; *Klinker* v. *Klinker*, 132 Cal.App.2d 687, 694 [283 P.2d 83].) The San Bernardino court, having properly retained jurisdiction over Dairymen's

operations, may therefore make such orders as are necessary to preserve its jurisdiction so as to prevent impairment of its judgment, to avoid conflicting regulations and vexacious litigation, and to make a complete adjudication of the controversy. (*Hercules Glue Co.* v. *Littooy,* 45 Cal.App.2d 42, 45 [113 P.2d 490] ; 18 Cal.Jur.2d, § 59, pp. 243-245.)

The propriety of injunctive relief to prevent conflicting or vexacious litigation has long been established in our law. (Civ. Code, § 3422; Code Civ. Proc., § 526, subd. 6.) Where there exists two or more actions involving the same subject matter or the same facts or principles, restraint is necessary to prevent a multiplicity of judicial proceedings. (*Scott* v. *Industrial Acc. Com.,* 46 Cal.2d 76, 81-82 [293 P.2d 18].) Restraint is also necessary to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions relating to the same controversy. (*Scott* v. *Industrial Acc. Com., supra.*)

In summary, the San Bernardino Superior Court's action in restraining the Orange County suit was fully justified since its judgment was res judicata on the nuisance issue, and since it was empowered to make such orders as necessary to prevent impairment of its judgment and to avoid conflicting regulations and vexacious litigation.

The issue of laches does not present a serious question. Appellants urge that the respondent did not act diligently in seeking the injunction in that it permitted the Orange County suit to proceed unabated until a trial date had been set before moving to enjoin the present action. Any delay, however, was insignificant in point of time. Thus, the trial court's conclusion will not be set aside. (*Teixeira* v. *Verissimo,* 239 Cal.App.2d 147, 158 [48 Cal.Rptr. 496], *Marshall* v. *Marshall,* 232 Cal.App.2d 232, 252 [42 Cal.Rptr. 686].)

The issue involving the bond given by appellants in connection with the temporary restraining order in the Orange County case is completely irrelevant to this appeal. The issue of ultimate exoneration of, or realization upon, the surety bond is entirely collateral inasmuch as no recovery could ever be obtained upon the bond except by independent action against the surety after termination of the main action. (See *Casitas Inv. Co.* v. *Charles L. Harney, Inc.,* 203 Cal.App.2d 811, 818 [21 Cal.Rptr. 821].) If suit should ever

be filed, appellants would have every opportunity to be heard on the merits in any action on the bond.

The orders are affirmed.

McCabe, P. J., concurred.

Tamura, J., deeming himself disqualified, did not participate.

Appellants' petition for a hearing by the Supreme Court was denied November 27, 1968.