[No. S097308. Dec. 19, 2002.]

ADVANCED BIONICS CORPORATION et al., Plaintiffs and Respondents, v.
MEDTRONIC, INC., Defendant and Appellant.

MEDTRONIC, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ADVANCED BIONICS CORPORATION et al., Real Parties in Interest.

**COUNSEL**

Horvitz & Levy, David M. Axelrad, Andrea M. Gauthier, Mary-Christine Sungaila; Robins, Kaplan, Miller & Ciresi, Roman M. Silberfeld, Ernest I. Reveal, Bernice Conn and Susan L. Dunbar for Defendant and Appellant and for Petitioner.

Gibson, Dunn & Crutcher, John J. Swenson, Miguel A. Estrada, Georgiana G. Rodiger and Tanya M. Acker for Aetna, Inc., Aetna U.S. Healthcare Inc., and Aetna U.S. Healthcare of California, Inc., as Amici Curiae on behalf of Defendant and Appellant and Petitioner.

Mike Hatch, Attorney General (Minnesota), for State of Minnesota as Amicus Curiae on behalf of Defendant and Appellant and Petitioner.

King & Kent, K. Andrew Kent and Gregory N. Albright for Southern California Intellectual Property Rights Coalition as Amicus Curiae on behalf of Defendant and Appellant and Petitioner.

No appearance for Respondent Superior Court.

Loeb & Loeb, Fred B. Griffin, Todd M. Malynn; Feldman Gale & Weber, Michael J. Weber, James A. Gale; Greines, Martin, Stein & Richland and Robin Meadow for Plaintiffs and Respondents and for Real Parties in Interest.

Donald E. Warner, Jr., for California Staffing Professionals as Amicus Curiae on behalf of Plaintiffs and Respondents and Real Parties in Interest.

Ronald J. Gilson as Amicus Curiae on behalf of Plaintiffs and Respondents and Real Parties in Interest.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Ronald Reiter and Joseph Ragazzo, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Respondents and Real Parties in Interest.

James P. Stoneman II for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Respondents and Real Parties in Interest.

Wilson Sonsini Goodrich & Rosati, Ulrico S. Rosales, Tait Graves and David R. Burtt for Broadcom Corporation as Amici Curiae on behalf of Plaintiffs and Respondents and Real Parties in Interest.

---

## OPINION

**CHIN, J.**—We granted review to consider whether the superior court properly enjoined a party to a California lawsuit from taking any action in a Minnesota proceeding involving the same dispute. We conclude that under principles of judicial restraint and comity the temporary restraining order (TRO) issued here was improper. We therefore reverse the Court of Appeal's judgment.

### FACTS

Medtronic, Inc. (Medtronic), a Minnesota corporation with headquarters in Fridley, Minnesota, manufactures implantable neurostimulation devices used to treat chronic pain. In 1995, Medtronic hired plaintiff Mark Stultz in Minnesota as a senior product specialist responsible for spinal cord stimulator lead wires. He was soon promoted to senior product manager in the "Neurostimulation-Pain Division," where he was responsible for managing Medtronic's neurostimulation products.

On accepting employment, Stultz signed the "Medtronic Employee Agreement" (Agreement). The Agreement contained a covenant not to compete, providing that for two years after employment termination, Stultz would not "directly or indirectly render services (including services in research) to any person or entity in connection with the design, development, manufacture, marketing, or sale of a Competitive Product that is sold or intended for use

or sale in any geographic area in which Medtronic actively markets a Medtronic Product or intends to actively market a Medtronic Product of the same general type of function." The Agreement defined a "Competitive Product" as "of the same general type, performs similar functions, or is used for the same purposes as a Medtronic Product on which the employee worked during the last two years of employment or about which he/she received or had knowledge of Confidential Information."

The Agreement included a choice-of-law provision: "The validity, enforceability, construction and interpretation of this Agreement shall be governed by the laws of the state in which the Employee was last employed by Medtronic." For the duration of his employment, Stultz worked for Medtronic's Minnesota office.

On June 7, 2000, Stultz resigned from Medtronic and went to California to work for Advanced Bionics Corporation (Advanced Bionics), a Delaware corporation with headquarters in Sylmar, California. The company, a competitor of Medtronic's, develops and manufactures implantable medical devices used to restore hearing to the profoundly deaf. It hired Stultz as a director of business development to market its own spinal cord stimulation device. On the same day, in Los Angeles County Superior Court, Stultz and Advanced Bionics sued Medtronic for declaratory relief, alleging that Medtronic's covenant not to compete and choice-of-law provisions violate California's law and public policy and are void under Business and Professions Code section 16600.[1] Section 16600 provides in pertinent part that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[2]

On June 8, 2000, Stultz and Advanced Bionics notified Medtronic that they intended to apply for a TRO. They applied for an order "enjoining Medtronic from taking any action, other than in this court, to enforce its non-competition agreement with Mr. Stultz, or to otherwise restrain Mr. Stultz from working for Advanced Bionics . . . ." The trial court put over the matter for one day in order to give Medtronic an opportunity to respond. The court rejected Stultz and Advanced Bionics' assertion that Medtronic would use the time to "race to court" in Minnesota. Medtronic immediately removed the action to federal court in order to avoid a hearing on the TRO.

On June 9, 2000, while the action was pending in federal court, Medtronic filed an action in Minnesota state court alleging claims for breach of contract

---

[1] All statutory references are to the Business and Professions Code unless otherwise stated.

[2] A few days later, Stultz and Advanced Bionics amended the complaint to add unfair competition and unfair business practices claims under section 17200 et seq. That section defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice . . . ." (*Ibid.*)

against Stultz and tortious interference with contract against Advanced Bionics. Medtronic filed the action in order to prevent Stultz from working on a competing product at Advanced Bionics. Medtronic then obtained a TRO from the Minnesota court enjoining Advanced Bionics from hiring Stultz in any competitive role. The order also barred both parties "[f]rom making any motion or taking any action or obtaining any order or direction from any court that [would] prevent or interfere in any way with [the Minnesota court's] determining whether it should determine all or any part of the claims alleged in [the Minnesota] lawsuit, including claims for temporary, preliminary or permanent relief."

Within a week, the federal court remanded the California action to the trial court, finding, among other things, that Medtronic had filed its removal notice without evidentiary support and "for the improper purpose of avoiding an unfavorable ruling upon a pending motion before a state court." The federal order stated that removal was improper because Medtronic, a Minnesota company, purported to rely on diversity jurisdiction, even though it knew Stultz was still a Minnesota resident. The federal court also noted that Medtronic had removed the California action "not to have the matter heard in this court, but to interfere with [the TRO] matter being heard."

Thereafter, on July 21, 2000, Medtronic filed a motion in Los Angeles County Superior Court to dismiss or stay the California action on the ground the matter should be decided in Minnesota. The court denied the motion, finding that under a totality of the circumstances, staying or dismissing the California action would not serve the interests of substantial justice.

On August 3, 2000, the Minnesota court issued a preliminary injunction that was similar to its TRO, except it did not include the provision restraining Stultz and Advanced Bionics from pursuing other litigation; it simply restricted Stultz's activities as an Advanced Bionics employee. The court also dissolved the TRO. In Minnesota, Stultz and Advanced Bionics appealed the order issuing the preliminary injunction.

On August 8, 2000, Stultz and Advanced Bionics applied ex parte to the California court for a TRO and order to show cause re preliminary injunction to prohibit Medtronic from taking any further steps in the Minnesota action. The court granted the application, finding there was a "substantial chance" that Medtronic would "go to the Minnesota court [and] attempt to undercut the California court's jurisdiction." Medtronic was "restrained and enjoined from taking any action whatsoever, other than in this Court, to enforce [its covenant not to compete] against . . . Stultz or to otherwise restrain . . .

Stultz from working for Advanced Bionics in California, including but not limited to making any appearance, filing any paper, participating in any proceeding, posting any bond, or taking any other action in the second-filed [Minnesota] lawsuit . . . ."[3] This TRO was the subject of Medtronic's appeal in the California Court of Appeal.

On August 16, 2000, the Minnesota court amended its August 3 preliminary injunction (purportedly nunc pro tunc), stating it had "failed to incorporate language enjoining [Stultz and Advanced Bionics] from obtaining relief in another court that would effectively stay or limit [the Minnesota] action." The court added a provision enjoining Stultz and Advanced Bionics "from seeking any interim or temporary relief from any other court that would effectively stay, limit or restrain [the Minnesota] action," and ordered them to "move to vacate and rescind the August 8, 2000 [TRO] obtained in the California action and refrain from seeking any relief in that action that stays or restrains [the Minnesota] action in any way."[4]

Stultz and Advanced Bionics informed the Los Angeles County Superior Court that the Minnesota court had directed them to seek vacation of the TRO. The superior court refused to vacate its order. The next day, the Minnesota court held a pretrial conference. Stultz and Advanced Bionics appeared, but Medtronic did not, claiming the California TRO prohibited it from appearing. After a telephone conversation with the Minnesota judge, however, the Los Angeles County Superior Court lifted the TRO temporarily to allow Medtronic to participate in settlement negotiations in Minnesota and in California. The negotiations were unsuccessful.

After additional procedural motions, Medtronic filed a petition for writ of mandate in the Second District Court of Appeal, seeking to continue trial to May 2001. The Court of Appeal stayed the trial (and later stayed all proceedings), issued an order to show cause, and set the matter for hearing.

The Court of Appeal considered the appeal (from the order granting the TRO) and the writ petition (challenging the denial of a trial continuance)

---

[3]By order to show cause, the court set a hearing to determine whether it should issue a preliminary TRO, but that matter was taken off calendar when the parties stipulated that the TRO would remain in effect.

[4]In a published opinion, on June 26, 2001, the Minnesota Court of Appeal affirmed the preliminary TRO, rejecting Stultz and Advanced Bionics contention that the trial court erred by failing to defer to the "first-filed" California action and observing that the "first-filed rule" is not intended to be applied in a rigid or inflexible manner. (*Medtronic, Inc. v. Advanced Bionics Corp.* (Minn.Ct.App. 2001) 630 N.W.2d 438, 449-450.) The court concluded that "Minnesota . . . has a strong interest in having contracts executed in this state enforced in accordance with the parties' expectations." (*Id.* at p. 456.)

together and issued the decision from which Medtronic seeks review. The court held that (1) the trial court's TRO was necessary and proper to protect plaintiffs' interests pending final disposition of the action, and thus was properly issued; (2) notwithstanding the choice-of-law provision in the Agreement, the case would be decided under California law; and (3) because California law would apply and the California action was filed first, California courts should decide the dispute. The Court of Appeal then denied the writ petition as moot. This appeal followed.

DISCUSSION

*Issuance of the TRO*

*Antisuit TRO's must be granted with restraint*

 Although Medtronic acknowledges that, under certain circumstances, a California court has the power to issue a TRO prohibiting a party from taking action in a case pending in another jurisdiction that would interfere with the California court's proceedings, it asserts that the Court of Appeal here erred in concluding that the TRO entered in this action was proper. Medtronic claims that the Court of Appeal did not place sufficient emphasis on principles of judicial restraint and comity that strongly inform against issuance of the TRO in this case.

We recognize this is a case of first impression, but note that nearly 100 years ago, this court observed that "[t]he courts of this state have the same power to restrain persons within the state from prosecuting actions in either domestic or foreign jurisdictions which courts of equity have elsewhere." (*Spreckels v. Hawaiian Com. etc. Co.* (1897) 117 Cal. 377, 378 [49 P. 353] (*Spreckels*).) *Spreckels* then identified the circumstances under which a trial court is statutorily prohibited from issuing an order restraining litigation in another forum.

*Spreckels* reversed a California trial court order restraining the defendant from further prosecuting an action he had commenced in the Republic of Hawaii (which did not become United States territory until 1898). (*Spreckels, supra,* 117 Cal. at pp. 378-380.) The court based its holding on the fact that the Hawaii action was pending when the California action seeking a TRO commenced. The court relied on Civil Code section 3423, which remains substantially the same in substance today as it was in 1897, and which specifies the circumstances when a court may not grant a TRO: "(a) To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless the restraint is necessary to prevent

a multiplicity of proceedings. [¶] (b) To stay proceedings in a court of the United States. [¶] (c) To stay proceedings in another state upon a judgment of a court of that state. . . ." *Spreckels* rejected the plaintiffs' contention that subdivision (a) was limited to California courts, concluding that it was intended as a comprehensive statement of the entire law upon the subject because it was included in part I of the fourth division of the Civil Code. (*Spreckels, supra,* 117 Cal. at pp. 379-380.)

Under the *Spreckels* rule and Civil Code section 3423, therefore, the rule barring injunctive orders in specific instances is inapplicable here. Although *Spreckels* recognized that a California court might have power to issue a TRO to prevent multiple proceedings, and implicitly recognized a forum court's power to restrain proceedings, the court never suggested, implicitly or otherwise, that a court may ignore additional proceedings that arise after the initial action commences. The significant principles of judicial restraint and comity inform that we should use that power sparingly.

Several sister state decisions guide our reasoning. These decisions hold that even if a sister state applies different substantive law than the forum state, that fact alone does not justify the issuance of a TRO enjoining proceedings in the sister state. The Texas Supreme Court has observed that a single parallel proceeding in a foreign forum does not constitute a "multiplicity of suits." (*Golden Rule Ins. Co. v. Harper* (Tex. 1996) 925 S.W.2d 649, 651.) *Arpels v. Arpels* (1960) 8 N.Y.2d 339, 341 [207 N.Y.S.2d 663, 170 N.E.2d 670, 671], held that the use of injunctive relief "to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed, for its exercise represents a challenge, albeit an indirect one, to the dignity and authority of that tribunal." (See also *Pfaff v. Chrysler Corp.* (1992) 155 Ill.2d 35, 43 [182 Ill.Dec. 627, 610 N.E.2d 51, 54-55] [court's equity powers must be invoked with great restraint to avoid conflicts and reciprocal interference with jurisdiction]; *Gannon v. Payne* (Tex. 1986) 706 S.W.2d 304, 306 [power to enjoin proceedings pending in a foreign jurisdiction should be exercised sparingly and under special circumstances only].) Medtronic therefore claims that under the judicial restraint principle, if restraining orders are permissible, they must be used only in the most exceptional circumstances, when parallel in personam actions are at stake and "it is necessary for one court to take control of the litigation to ensure an orderly and just resolution." (*St. Paul Surplus Lines Ins. Co. v. Mentor Corp.* (Minn.Ct.App. 1993) 503 N.W.2d 511, 516.)

It is true, as Stultz and Advanced Bionics observe, that certain California cases have recognized that "Where there exists two or more actions involving the same subject matter or the same facts or principles, [a TRO] is

necessary to prevent a multiplicity of judicial proceedings." (*Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269, 279 [72 Cal.Rptr. 102]; see *Greene v. Superior Court* (1951) 37 Cal.2d 307, 311 [231 P.2d 821]; see also, e.g., Code Civ. Proc., § 526, subd. (a)(1), (3), & (6) [pending litigation may be enjoined to prevent a multiplicity of judicial proceedings and for other unrelated reasons].) The above decisions, however, sought to avoid an "unseemly conflict" that might arise between California courts if they were free to make contradictory awards. (*Greene, supra,* 37 Cal.2d at p. 311; *Rynsburger, supra,* 266 Cal.App.2d at p. 279.) When the cases involve different states, as in the matter before us, judicial restraint takes on a more fundamental importance. The possibility that one action may lead to a judgment first and then be applied as res judicata in another action "is a natural consequence of parallel proceedings in courts with concurrent jurisdiction, and not reason for an injunction." (*Auerbach v. Frank* (D.C. 1996) 685 A.2d 404, 407.) "[T]he possibility of an 'embarrassing race to judgment' or potentially inconsistent adjudications does not outweigh the respect and deference owed to independent foreign proceedings." (*Ibid.*)

Stultz and Advanced Bionics also contend that although we should pay deference to foreign state proceedings, California's strong public policy against noncompetition agreements under section 16600 weighs against allowing the action to proceed in Minnesota and provides the exceptional circumstance that warrants our upholding the California court's TRO. As they observe, the law protects Californians, and ensures "that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859 [27 Cal.Rptr.2d 573].) It protects "the important legal right of persons to engage in businesses and occupations of their choosing." (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520 [66 Cal.Rptr.2d 731].) We have even called noncompetition agreements illegal. (See, e.g., *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123, fn. 12 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Therefore, according to Stultz and Advanced Bionics, because the noncompetition provision in the Agreement is broad in application and forbids Stultz from working for any competitor on a competitive product for two years after employment termination, it is likely that a California court would conclude the provision is void under section 16600.[5]

We agree that California has a strong interest in protecting its employees from noncompetition agreements under section 16600. But even assuming a

---

[5]Because we conclude the California court improperly issued the TRO, we do not address the trade secrets issues raised in the parties' briefs. We also deny, as inapplicable to our analysis and decision, the request for judicial notice Stultz and Advanced Bionics submitted,

California court might reasonably conclude that the contractual provision at issue here is void in this state, this policy interest does not, under these facts, justify issuance of a TRO against the parties in the Minnesota court proceedings. A parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a TRO against parties pursuing an action in a foreign jurisdiction.

The comity principle also supports our conclusion. ■ Comity is based on the belief " ' "that the laws of a state have no force, *proprio vigore*, beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage." ' . . . 'The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.' " (*Estate of Lund* (1945) 26 Cal.2d 472, 489 [159 P.2d 643, 162 A.L.R. 606]; see also *Gannon v. Payne, supra,* 706 S.W.2d at p. 308 [involving parallel actions in Canada and Texas].) ■ The comity principle requires that we exercise our power to enjoin parties in a foreign court sparingly, in line with the policy of judicial restraint discussed above.

Notwithstanding comity principles, Advanced Bionics contends that the first-filed rule provides alternative support for the Court of Appeal's decision to uphold the TRO and to enjoin the litigants from proceeding in Minnesota. We disagree. ■ The first-filed rule in California means that when two courts of the same sovereignty have concurrent jurisdiction, the first to assume jurisdiction over a particular subject matter of a particular controversy takes it exclusively, and the second court should not thereafter assert control over that subject matter. The first-filed rule "was never meant to apply where the two courts involved are not courts of the same sovereignty. [Citation.] Restraining a party from pursuing an action in a court of foreign jurisdiction involves delicate questions of comity and therefore 'requires that such action be taken only with care and great restraint.' " (*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.* (3d Cir. 1981) 651 F.2d 877, 887, fn. 10.)

■ We conclude, therefore, that the Court of Appeal erred in upholding the TRO issued against the parties in the Minnesota proceedings. California

that includes evidence of legislative intent in drafting the Uniform Trade Secrets Act. (Evid. Code, § 459.)

courts have the same power as other courts to issue orders that assist in protecting their jurisdiction. However, enjoining proceedings in another state requires an exceptional circumstance that outweighs the threat to judicial restraint and comity principles. As explained, the circumstances of this case do not provide sufficient justification to warrant our court's issuing injunctive orders against parties pursuing the Minnesota litigation.[6]

## CONCLUSION

We hold that the trial court improperly issued the TRO enjoining Medtronic from proceeding in the Minnesota action. We also conclude, however, that the Minnesota action does not divest California of jurisdiction, and Advanced Bionics remains free to litigate the California action unless and until Medtronic demonstrates to the Los Angeles County Superior Court that any Minnesota judgment is binding on the parties. As stated above, potentially conflicting judgments naturally result from parallel proceedings but do not provide a reason for issuing a TRO. (*Ante,* at pp. 705-706.) For these reasons, we reverse the Court of Appeal judgment and remand for additional proceedings consistent with this conclusion.

George, C. J., Kennard, J., Baxter, J., and Werdegar, J., concurred.

**BROWN, J.,** Concurring.—I agree with most of Justice Moreno's concurrence. Specifically, I agree with him that the majority has not sufficiently explained its reasons for deferring to principles of comity in this case, and therefore its opinion gives insufficient guidance to lower courts. (Conc. opn. of Moreno, J., *post,* at p. 710.) I do not, however, agree with the implication in Justice Moreno's opinion that a choice-of-law analysis is irrelevant to determining whether to enjoin parties from litigating a dispute in a foreign jurisdiction. (*Id.* at p. 718.) If a careful choice-of-law analysis indicates that the foreign jurisdiction's law applies to the parties' dispute, I think that fact weighs heavily in favor of permitting the foreign proceeding to go forward unimpeded.

This case involves a contract dispute between Medtronic, Inc. (Medtronic), a Minnesota corporation, and Mark Stultz, a former Medtronic employee who worked for Medtronic in Minnesota and, at that time, resided

---

[6]Advanced Bionics also contends that the choice-of-law analysis in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 466, footnote 6 [11 Cal.Rptr.2d 330, 834 P.2d 1148], supports application of California law to the facts of this case and provides alternative support for the Court of Appeal's decision to uphold the antisuit TRO. Because we have determined that the court improperly upheld the TRO against the Minnesota proceedings, we do not reach the choice-of-law issue here.

in Minnesota. The parties executed the employment contract in Minnesota, and the choice-of-law provision in the contract designates Minnesota law. Under the terms of the contract, Stultz agreed not to work for a competitor of Medtronic for two years after termination of his employment with Medtronic, and that provision is enforceable under Minnesota law, though not under California law. California had absolutely no interest in this matter until Stultz relocated to California, terminated his employment with Medtronic, and began employment with Advanced Bionics Corporation, a Delaware corporation with headquarters in California. Under these circumstances, where almost all the geographic points of contact in the dispute lie in Minnesota, California's concededly strong interest in promoting competition by encouraging the free movement of personnel laterally across an industry is not " 'materially greater' " than Minnesota's countervailing interest in enforcing bargained-for restrictions on that free movement. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 466 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) Therefore, the contract's choice-of-law provision, designating Minnesota law, controls. (*Ibid.*) Stultz, having enjoyed the benefits of his contract with Medtronic, should not be free to avoid his side of the agreement and thereby cancel some of the value for which Medtronic legitimately bargained.

I can think of several contexts in which a person might relocate to California but remain obligated under contracts entered into in the place of his or her former residence. California courts cannot then reach out and nullify those foreign obligations simply because the same obligations, if entered into here, would run afoul of important California policies. California government is, of course, free to make policy choices for California (subject to constitutional limitations), but we cannot also tell our sister states how they should govern. Choice of law is not, therefore, simply a matter " 'of determining which conflicting law manifest[s] the "better" or the "worthier" social policy,' " because doing so would fail to recognize that, in a federal system, " 'states are empowered to mold their policies as they wish,' " and therefore either state's policy is equally valid as representing the choice of a coequal sovereign. (*Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 165 [148 Cal.Rptr. 867, 583 P.2d 721].) For this reason, choice of law requires a fair assessment of a jurisdiction's *interests* in a dispute, not an assessment of how right the jurisdiction's policy is. This point is particularly important because courts have a natural bias favoring the law of the state in which they sit, and litigants are aware of this bias, explaining in part the procedural maneuvering and forum shopping that occurred here. If we permit California courts to apply California law to a dispute like the one at issue here, then California's economic strength gives

rise to a kind of political imperialism, absorbing every state into the California legal ethos.

Relocating to California may be, for some people, a chance for a fresh start in life, but it is not a chance to walk away from valid contractual obligations, claiming California policy as a protective shield. We are not a political safe zone vis-à-vis our sister states, such that the mere act of setting foot on California soil somehow releases a person from the legal duties our sister states recognize. Rather, we give full faith and credit to the laws of our sister states, and in a case such as this one, I think doing so requires California courts to apply Minnesota law. Moreover, that conclusion is highly relevant to determining whether the trial court's antisuit injunction in this case was appropriate. I see no reason for a trial court to enjoin parties from litigating in a foreign jurisdiction when the foreign jurisdiction's law applies to the dispute and therefore the task of the California courts will ultimately be to discern how the enjoined proceeding would have come out.

For the reasons stated in Justice Moreno's concurrence, supplemented by the additional points made here, I concur.

**MORENO, J.,** Concurring.—I agree with the majority that the trial court improperly enjoined Medtronic, Inc., from pursuing its action in Minnesota. The majority concludes that the trial court's temporary restraining order (TRO) was improper under notions of judicial restraint and comity. I write separately to explain why I believe these notions of judicial restraint and comity should apply in this case and also to discuss, more generally, what I consider to be the appropriate criteria for issuing antisuit injunctions.

The majority recognizes California's interest in protecting employees from noncompetition agreements, yet it concludes that "this policy interest does not, under these facts, justify issuance of a TRO against the parties in the Minnesota court proceedings." (Maj. opn., *ante*, at p. 707.) The majority explains that "[a] parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a TRO against parties pursuing an action in a foreign jurisdiction." (*Ibid.*) Since there will always be sovereignty concerns when parallel actions are proceeding in two different states, I write separately to explain why I believe that an antisuit injunction is inappropriate in this case notwithstanding California's public policy interest against noncompetition agreements.

Comity has been described as a "complex and elusive concept." (*Laker Airways v. Sabena, Belgian World Airlines* (D.C. Cir. 1984) 731 F.2d 909,

937 (*Laker Airways*); see *Philips Medical Systems Intern. B.V. v. Bruetman* (7th Cir. 1994) 8 F.3d 600, 604 [describing comity as "a traditional, although in the nature of things a rather vague, consideration in the exercise of equitable discretion"].) In the issues presented for review in this case, Medtronic asserts that "[t]his court has not examined the criteria for issuing antisuit injunctions since 1897." (Citing *Spreckels v. Hawaiian Com. etc. Co.* (1897) 117 Cal. 377 [49 P. 353] (*Spreckels*).) Since this issue is now squarely before us, I believe it is necessary for us to explain what criteria should be used in determining when a court of this state should issue an antisuit injunction.

## I.

State courts have the power to issue antisuit injunctions; they can restrain litigants from proceeding in suits brought in a sister state or in a foreign nation. (*Spreckels, supra,* 117 Cal. at p. 378; *Pfaff v. Chrysler Corp.* (1993) 155 Ill.2d 35, 43 [182 Ill.Dec. 627, 610 N.E.2d 51, 54] (*Pfaff*); *Gannon v. Payne* (Tex. 1986) 706 S.W.2d 304, 306.)

State courts typically issue antisuit injunctions only in exceptional circumstances, but the state courts employ various different tests to determine whether an antisuit injunction is appropriate. Texas, for example, enjoins foreign suits "sparingly, and only in very special circumstances." (*Christensen v. Integrity Ins. Co.* (Tex. 1986) 719 S.W.2d 161, 163.) Texas courts apply a four-part test to determine whether an antisuit injunction is appropriate: "1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation." (*Golden Rule Ins. Co. v. Harper* (Tex. 1996) 925 S.W.2d 649, 651, citing *Gannon v. Payne, supra,* 706 S.W.2d at p. 307.)

In Illinois, a foreign action can be restrained if it "will result in fraud or gross wrong or oppression; a clear equity must be presented requiring the interposition of the court to prevent manifest wrong and injustice." (*Pfaff, supra,* 610 N.E.2d at p. 61.) An antisuit injunction is not issued "merely because of inconvenience or simultaneous, duplicative litigation, or where a litigant simply wishes to avail himself of more favorable law." (*Id.* at p. 62.) Further, the mere fact that a party filing in another state might benefit from a more favorable law does not mean that the party has "avoided or defeated the laws of Illinois so as to require equitable interposition." (*Id.* at p. 65.) Illinois courts inquire whether the jurisdiction of the Illinois trial court is threatened, and whether the litigant has "avoided or defeated the laws of Illinois" by filing suit in a sister state. (*Ibid.*)

Similarly, in New York, the use of injunctive power to restrain litigation in a foreign court is "rarely and sparingly employed, for its exercise represents a challenge, albeit an indirect one, to the dignity and authority of that tribunal. Accordingly, an injunction will be granted only if there is danger of fraud or gross wrong being perpetrated on the foreign court." (*Arpels v. Arpels* (1960) 8 N.Y.2d 339, 341 [207 N.Y.S.2d 663, 170 N.E.2d 670, 671].)[1]

## II.

"The state law standards for interstate injunctions are often similar to those for international injunctions, and the authoritative cases tend to be used interchangeably." (George, *Parallel Litigation* (1999) 51 Baylor L.Rev. 769, 840.) Since state courts consider the same criteria for deciding whether to issue both intrastate and international injunctions, it is understandable that some state courts have looked to, and incorporated, the standards established by federal courts to determine when a federal court may enjoin a proceeding in a foreign nation. (See, e.g., *Gannon v. Payne, supra,* 706 S.W. at p. 307, citing *Laker Airways, supra,* 731 F.2d 909; and *Seattle Totems Hockey, etc. v. National Hockey League* (9th Cir. 1981) 652 F.2d 852 (*Seattle Totems Hockey Club*), cert. denied *sub nom. Northwest Sports Enterprises, Ltd. v. Seattle Totems Hockey Club, Inc.* (1982) 457 U.S. 1105 [102 S.Ct. 2902, 73 L.Ed.2d 1313].)

Another reason that state courts have looked to federal law is that federal law is fairly well developed in the area of foreign antisuit injunctions. Two competing views have emerged: one view, deemed the "liberal approach," looks to whether the foreign suit involves similar parties and issues; the other view, described as the "restrictive approach," considers whether issuing an antisuit injunction would offend notions of international comity. (Compare *Kaepa, Inc. v. Achilles Corp.* (5th Cir. 1996) 76 F.3d 624 with *China Trade and Development v. M.V. Choong Yong* (2d Cir. 1987) 837 F.2d 33 (*China Trade*).)

The Fifth, Seventh, and Ninth Circuit Courts of Appeals have adopted, or "incline[d] toward" the liberal approach. (*Philips Medical Systems Intern. B.V. v. Bruetman, supra,* 8 F.3d at p. 605 [7th Cir.]; see *Kaepa, Inc. v. Achilles Corp., supra,* 76 F.3d 624 [5th Cir.]; *Allendale Mut. Ins. v. Bull Data*

---

[1]Based on our research, it appears that the Minnesota Supreme Court has not addressed the standards for issuing antisuit injunctions. A lower court has held that a Minnesota court could enjoin parallel litigation proceeding in Texas, based on the substantial similarity of the cases and the first filed status of the Minnesota case. (*First State Ins. v. Mn. Min. and Mfg.* (Minn.Ct.App. 1995) 535 N.W.2d 684, 689.)

*Systems* (7th Cir. 1993) 10 F.3d 425; *Seattle Totems Hockey Club, supra*, 652 F.2d 852 [9th Cir.]; *In re Unterweser Reederei, Gmbh* (5th Cir. 1970) 428 F.2d 888, revd. on other grounds *sub nom. The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1 [92 S.Ct. 1907, 32 L.Ed.2d 513].)

Under the liberal approach, a duplication of the parties and issues, alone, is generally sufficient to justify the issuance of an antisuit injunction. (See, e.g., *Seattle Totems Hockey Club, supra*, 652 F.2d at p. 856.) Courts following this approach consider vexatiousness or oppressiveness in a race to judgment in the foreign forum as sufficient grounds to issue an antisuit injunction. As the Fifth Circuit stated, "a district court does not abuse its discretion by issuing an antisuit injunction when it has determined 'that allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in "inequitable hardship" and "tend to frustrate and delay the speedy and efficient determination of the cause." ' " (*Kaepa, Inc. v. Achilles Corp., supra*, 76 F.3d at p. 627, fn. omitted.)

In contrast, the District of Columbia, Second, Third, Sixth, and possibly the Eleventh Circuit Courts of Appeals have adopted the restrictive approach, which places a greater emphasis on international comity. (*Stonington Partners v. Lernout & Hauspie Speech* (3d Cir. 2002) 310 F.3d 118 (*Stonington Partners*); *General Elec. Co. v. Deutz Ag* (3d Cir. 2001) 270 F.3d 144; *Gau Shan Co., Ltd. v. Bankers Trust Co.* (6th Cir. 1992) 956 F.2d 1349 (*Gau Shan*); *Sea Containers Ltd. v. Stena AB* (D.C. Cir. 1989) 890 F.2d 1205; *China Trade, supra*, 837 F.2d 33 [2d Cir.]; *Laker Airways, supra*, 731 F.2d 909 [D.C. Cir.]; *Mutual Service Cas. Ins. Co. v. Frit Industries* (M.D.Ala. 1992) 805 F.Supp. 919, 921, affd. (11th Cir. 1993) 3 F.3d 442.)

The circuits that follow the restrictive approach "hold that the only proper grounds to grant a foreign antisuit injunction are: 1) to protect the forum's jurisdiction, or 2) to prevent evasion of the forum's important public policies." (*Gau Shan, supra*, 956 F.2d at p. 1354; see *Laker Airways, supra*, 731 F.2d at p. 927.) These circuits maintain that the mere duplication of parties and issues is not a sufficient basis for the issuance of an antisuit injunction. They reason that "[f]actors such as 'vexatiousness' or 'oppressiveness' and a 'race to judgment' are 'likely to be present whenever parallel actions are proceeding concurrently' " and therefore are not sufficient grounds for issuance of an antisuit injunction. (*Gau Shan, supra*, 956 F.2d at p. 1355.)

Courts applying the restrictive approach stress comity, rather than concerns about duplication and a race to judgment, in deciding whether to issue an antisuit injunction. As the Sixth Circuit stated, "[a]ntisuit injunctions . . .

deny foreign courts the right to exercise their proper jurisdiction. Such action conveys the message, intended or not, that the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility." (*Gau Shan, supra*, 956 F.2d at p. 1355.) As a result, "[c]omity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases." (*Id.* at p. 1354.)

### III.

In determining which criteria courts of this state should apply when deciding whether to issue an antisuit injunction, I agree with the majority that considerations of comity and judicial restraint should be paramount. Therefore, I would adopt a test that emphasizes these considerations. While the state courts have employed various standards for determining when an antisuit injunction is appropriate, it is in the federal context where these standards have been most fully explored.

The liberal approach favored by some federal circuit courts does not give sufficient attention to concerns of comity; under this approach, it is simply enough to show that there is parallel litigation in a foreign forum causing " 'an absurd duplication of effort' [which] would result in unwarranted inconvenience, expense, and vexation." (*Kaepa, Inc. v. Achilles Corp., supra*, 76 F.3d at p. 627, fn. omitted.) Unlike the liberal approach, the restrictive approach followed by other circuit courts finds that "the possibility of an 'embarrassing race to judgment' or potentially inconsistent adjudications does not outweigh the respect and deference owed to independent foreign proceedings." (*Laker Airways, supra*, 731 F.2d at pp. 928-929, fn. omitted.) The restrictive approach is clearly more protective of the principles of comity and judicial restraint. In deciding what criteria courts of this state should use for issuing antisuit injunctions, I would therefore adopt the restrictive approach.

Under this approach, courts should only issue antisuit injunctions in two situations: if "necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum." (*Laker Airways, supra*, 731 F.2d at p. 927.) The circuits that follow the restrictive approach "have interpreted these exceptions narrowly." (*Stonington Partners, supra*, 310 F.3d at p. 127.) As I explain below, neither of these exceptions apply in this case.

### A. *Protecting Jurisdiction*

In *Laker Airways*, the Court of Appeals for the District of Columbia Circuit approved an antisuit injunction where the foreign defendants had

initiated the foreign proceeding for the "sole purpose of terminating the United States claim" and where the foreign court had enjoined the parties from pursuing the United States action. (*Laker Airways, supra,* 731 F.2d at p. 915.) The foreign court was "not following a parallel track but attempt[ing] to carve out exclusive jurisdiction over concurrent actions." (*Id.* at p. 930.) In such a case, in which the foreign proceedings were "solely designed to rob the court of its jurisdiction," an antisuit injunction was necessary to protect the forum's jurisdiction. (*Id.* at p. 931.)

While *Laker Airways* presented a situation in which the jurisdiction of the forum state was in fact threatened, "[s]uch threats to a court's jurisdiction . . . are quite unusual." (*Gau Shan, supra,* 956 F.2d at p. 1356.) Typically, only two scenarios threaten a court's jurisdiction. The first is when the concurrent proceedings are in rem or quasi in rem. (*China Trade, supra,* 837 F.2d at p. 36.) In such a case, jurisdiction is based on the presence of property within the court's jurisdictional boundaries. A concurrent proceeding in another jurisdiction presents the danger that the foreign court will order the property transferred out of the jurisdictional boundaries of the first court, thereby depriving it of jurisdiction over the matter. The second scenario was presented in *Laker Airways.* In that case, a foreign court in an in personam action was attempting to carve out exclusive jurisdiction over the matter. In such a case, "an injunction may . . . also be necessary to protect the enjoining court's jurisdiction." (*China Trade, supra,* 837 F.2d at p. 36.)

Circuits that have followed the restrictive approach have held that the possibility that a foreign court may favor the party filing the foreign suit is not a threat to the jurisdiction of the United States courts. (*Gau Shan, supra,* 956 F.2d at p. 1356.) Even "the possibility that a ruling of a foreign court might eventually result in the voluntary dismissal of the claim before the United States court" does not threaten the United States court's jurisdiction. (*Ibid.*)

In the present case, the parallel proceeding initiated by Medtronic in Minnesota does not threaten the jurisdiction of the California courts. At the time when the California court issued the TRO at issue here, enjoining Medtronic "from taking any action whatsoever, other than in this Court," the Minnesota court had issued a preliminary injunction restricting Stultz's activities as an Advanced Bionics Corporation employee but not restraining the parties from pursuing other litigation. After the California court issued the antisuit TRO, the Minnesota court revised its preliminary injunction. Notably, however, the Minnesota court did not enjoin the action from

proceeding in a California court; instead, the Minnesota injunction was *defensive*; it enjoined the parties "from obtaining relief in another court that would effectively stay or limit [the Minnesota] action." Whereas the foreign proceedings in *Laker Airways* were "solely designed to rob the court of its jurisdiction" and the foreign court attempted to carve out exclusive jurisdiction, the Minnesota injunction did not seek to terminate the litigation in California, but was instituted merely to protect the jurisdiction of the Minnesota court. (*Laker Airways, supra,* 731 F.2d at p. 931.) Further, as courts applying the restrictive approach have held, the possibility that Medtronic may receive a more favorable ruling in a Minnesota court does not threaten the jurisdiction of a California court. (*Gau Shan, supra,* 956 F.2d at p. 1356.)

## B. *Evading Public Policies*

"Few cases have addressed a situation in which an anti-suit injunction has been appropriately entered to protect important public policy, but the courts that take a restrictive approach have referenced this exception as being narrowly drawn." (*Stonington Partners, supra,* 310 F.3d at p. 127.) "[O]nly the evasion of the most compelling public policies of the forum will support the issuance of an antisuit injunction." (*Gau Shan, supra,* 956 F.2d at p. 1358.)

Here, Stultz and Advanced Bionics, as well as several amici curiae, argue that California has a fundamental interest in protecting its employees from noncompetition agreements under Business and Professions Code section 16600.[2] They contend that allowing the parallel suit to proceed in Minnesota would undermine California's strong public policy interest.

Contrary to the arguments of Stultz and Advanced Bionics, however, the public policy exception does not allow for an injunction merely because two states may apply different substantive laws. "If any advantage in law was sufficient to justify application of the public policy exception, antisuit injunctions would become common and . . . comity a consideration of secondary importance. Procedural or substantive advantages offered by the forum law do not, of themselves, provide grounds for an antisuit injunction." (*Gau Shan, supra,* 956 F.2d at p. 1357.)

Even the possibility that the party filing in a sister state may benefit favorably from an application of that state's law does not necessarily constitute an evasion of the forum state's public policies. The Supreme Court of Illinois, for example, has held that Illinois law was not avoided or

---

[2]All statutory references are to the Business and Professions Code unless otherwise stated.

defeated in a case where "Chrysler may benefit from a liberal interpretation by a Michigan court of Michigan's law" and similar claims had already been dismissed without prejudice in Illinois. (*Pfaff, supra*, 610 N.E.2d at p. 65.) The court held that while a party may gain by filing suit in a sister state, "that gain alone does not mean that [the party filing in the forum state] has suffered a manifest wrong and injustice." (*Ibid.*) In addition, the possibility that a sister state may apply and enforce a different law is merely speculative and is present "whenever courts have concurrent jurisdiction." (*China Trade, supra*, 837 F.2d at p. 37.)

The crucial determination is whether the suit was filed in another state for the purpose of *evading* the important policies of the forum state. Such a purpose may be inferred, for example, if neither party has ties to the sister state in which a parallel suit has been initiated. Courts have found that a party's connection to the foreign jurisdiction minimizes the possibility that such a suit was filed for purposes of evading the forum state's law. For example, the Sixth Circuit found that the purpose of filing suit in Hong Kong was not to evade the policies of Tennessee, since one of the parties was a Hong Kong corporation and its assets were located there. (*Gau Shan, supra*, 956 F.2d at p. 1358.) Also, in *Arpels v. Arpels*, the New York Court of Appeal found that the filing of parallel divorce proceedings in France was appropriate based on the fact that the parties were married in France, lived there for several years, maintained a home there after moving to New York, and possibly were still citizens of France. (*Arpels v. Arpels, supra*, 207 N.Y.S.2d at p. 342.)

Similarly, courts have held that the identity of the so-called evading party is relevant in determining whether the purpose of the parallel litigation was to evade the laws of the forum state. (*Laker Airways, supra*, 731 F.2d at pp. 931-932.) Courts have granted an antisuit injunction in cases in which the litigants are both residents of the state in which the injunction is sought, and one resident is seeking to evade the law of the common domicile in order to gain an inequitable advantage over the other. In *Cole v. Cunningham* (1890) 133 U.S. 107, 119 [10 S.Ct. 269, 278, 33 L.Ed. 538], the United States Supreme Court affirmed a Massachusetts decree enjoining prosecution of a New York action, in which Massachusetts creditors prosecuted attachment suits against a Massachusetts debtor in New York to avoid Massachusetts insolvency laws. The court stated that the rule allowing courts to enjoin those over which they have jurisdiction "has been often applied by the courts of the domicile against the attempts of some of its citizens to defeat the operation of its laws, to the wrong and injury of others." (*Ibid.*)

Further, an evasive purpose might also be inferred if the foreign suit is initiated contrary to the dictates of a forum selection clause. If the foreign

suit is filed in adherence to the forum selection clause, however, an evasive purpose is less likely. For example, in *Kirby v. Norfolk Southern Railway Com.* (N.D.Ga. 1999) 71 F.Supp.2d 1363, 1371, the court found that there was no evidence from which to infer that the party filing suit in Australia was evading the public policies of the forum, based in large part on the forum selection clauses in the applicable contracts, selecting Australia as the forum of choice.

In the present case, the issue is not simply whether California has a strong public policy against noncompetition agreements. Instead, the question is whether Medtronic initiated its action in Minnesota for the purpose of *evading* California's public policy. Based on the facts of this case, I conclude that Medtronic did not institute its suit in Minnesota to evade California law. Medtronic is a Minnesota corporation. Medtronic entered into an employment contract with Stultz, a Minnesota resident, in Minnesota. The contract contained a choice-of-law provision that stated: "The validity, enforceability, construction and interpretation of this Agreement shall be governed by the laws of the state in which the Employee was last employed by Medtronic." Stultz worked for Medtronic's Minnesota office for the duration of his employment. Based on these significant ties to a Minnesota forum, as well as the choice-of-law clause designating Minnesota as the chosen forum, I cannot conclude that Medtronic filed suit in Minnesota for the purpose of evading California public policy.

I therefore do not agree with the argument of Stultz and Advanced Bionics, as well some of the amici curiae, that the issuance of the antisuit TRO by the California trial court was appropriate because California law should apply to the action. The Court of Appeal below reached this same conclusion, finding that California law should apply and therefore that the restraining order was appropriate to ensure that this dispute be litigated in California. The antisuit injunction case law does not involve a choice-of-law type of inquiry. A choice-of-law analysis "is simply not a good 'fit' with the injunction context." (*Stonington Partners, supra,* 310 F.3d at p. 130.) Here, the question is not whether California law should apply, but simply whether Medtronic initiated the suit in Minnesota for the purpose of evading California's public policy. Even though Medtronic may benefit by initiating a proceeding in Minnesota, I do not find that the purpose of Medtronic's action was to evade the public policy of California.

## IV.

Following the restrictive approach of the federal courts, I therefore conclude that this case does not fall within the exceptional circumstances in

which the issuance of an antisuit injunction is appropriate. Medtronic has a legal right to proceed in Minnesota and it is entitled to avail itself of that forum. In this case, an injunction is not necessary to protect the jurisdiction of the California courts, nor is it needed to prevent Medtronic from evading the public policy of California. Accordingly, I agree with the majority that the issuance of the antisuit injunction was inappropriate under principles of comity and judicial restraint.

The petition of plaintiffs and respondents for a rehearing was denied March 5, 2003, and the opinion was modified to read as printed above.